UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANGLE OF ATTACK LAND
SURVEYING, LLC

                                                                         03-CV-3987

                        Plaintiff,                       (TCP) (WDW)

      -against-

                                                                MEMORANDUM
                                                                          AND
HANDEX OF NEW JERSEY, INC., and                    ORDER
GREAT AMERICAN INSURANCE COMPANY

                        Defendants.
-----------------------------------------------------------------X
PLATT, District Judge

       Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant, Handex of New Jersey, Inc. ("Handex"), moves for summary judgment on its first affirmative defense and counterclaim for breach of contract based upon an alleged attempt by Plaintiff, Angle of Attack Land Surveying, LLC ("AOA" or "Plaintiff"), to modify the payment terms of their contract. Defendants, Handex and Great American Insurance Company ("GAIC"), (collectively "Defendants"), move for summary judgment on their sixth affirmative defense asserting that the court lacks subject matter jurisdiction because Plaintiff cannot satisfy the amount in controversy requirement. Plaintiff cross-moves for summary judgment on all claims, affirmative defenses and counterclaims.

       As will be explained below, there are so many issues of material

fact raised by all of the parties that there is no basis on which any of the motions for summary judgment may be granted. Hence, they are all DENIED, and the parties should prepare for trial.

## BACKGROUND

Defendant, Handex, is a Delaware corporation engaged in the business of landfill construction. (Anderson Aff. ¶ 2). AOA is a New York limited liability company engaged in the business of land surveying. (Mitchell Aff. ¶ 3). Defendant, GAIC, is an Ohio corporation. As will be discussed in greater detail below, Plaintiff asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On December 5, 2002, the Islip Resource Recovery Agency ("IRRA") entered into a public works contract with Handex for landfill construction services at the Blydenburgh Road Landfill Complex (the "Contract") in the Town of Islip, New York. (Pl.'s Ex. M). The IRRA issued a notice-to-proceed letter to Handex on December 10, 2002. (Pl.'s Ex. M). The Contract duration was extended from 120 to 180 days, and the completion date was identified as June 7, 2003. (Pl.'s Ex. M). The Contract included a liquidated damages provision for late performance. (Pl.'s Ex. M). Defendant, GAIC, provided the payment bond for the project. (Anderson Aff. ¶ 4).

On December 12, 2002, Handex and AOA entered into a

subcontract for land surveying services in connection with the Contract (the "subcontract"). (Def.'s Ex. G). An attachment to the subcontract provided for payment according to an hourly rate schedule. (Def.'s Ex. G). Article 3(a) of the subcontract provided that AOA would submit invoices to Handex "by the 15th of every month for the Work performed or materials delivered to the site during the preceding month. Handex shall pay in full all undisputed portions of invoices within sixty (60) days of receipt." (Def.'s Ex. G). AOA contends that it worked continuously under the subcontract throughout January, February and March. (Mitchell Aff. ¶ 4). On March 16, 2003, AOA submitted its first invoice for $19,133.75 for services rendered through March 15, 2003. (Pl.'s Ex. A). On March 29, 2003, AOA submitted its second invoice for $9,427.50 for services rendered from March 17, 2003 through March 29, 2003. (Pl.'s Ex. B). On April 30, 2003, AOA submitted a third invoice for $13,340.00 for services rendered from March 30, 2003 through April 25, 2003. (Pl.'s Ex. C). AOA asserts that it continued to perform under the subcontract until it was terminated by Handex by letter dated May 14, 2003. (Pl.'s Ex. D).

Under the terms of the subcontract, payment on AOA's first invoice was not due until May 16, 2003. (Def.'s Ex. G). On or about May 3, 2003, however, AOA sent a letter to Handex regarding a "recent conversation" and stating that the letter would serve as a "notice of change order." (Pl.'s Ex. F).

The letter further advised that:

> Due to changes in the scope and project requirements Angle of Attack requires that all invoices be paid COD. AOA will require that all outstanding invoices be paid up to date and all further invoices will be paid on a COD basis. Invoices going forward will be billed every Friday by fax and are to be paid by check to be received by the following Wednesday by overnight mail.

(Pl.'s Ex. F). AOA's president, Douglas Mitchell ("Mitchell"), states that the May 3, 2003, letter simply confirmed a conversation that he had had with Handex's principal hydrogeologist, Jed Myers ("Myers"), who had signed the subcontract on behalf of Handex. (Mitchell Aff. ¶¶ 1, 10; Def.'s Ex. G). In this conversation, Mitchell alleges that he discussed with Myers the incompetence and mismanagement of the Contract by Handex, which had contributed to the ballooning of AOA's costs and concerns about timely payment, and which eventually led to Handex's default under the Contract.[1] (Mitchell Aff. ¶¶ 6, 10, 18-22). Myers, on the other hand, denies that such a conversation with Mitchell

---

[1] On June 6, 2003, IRRA declared Handex in default on the Contract and terminated Handex. The stated grounds for termination included Handex's: (i) refusal or failure to supply enough properly skilled workmen or proper materials to complete the contract; (ii) refusal or failure to complete the work on time; and (iii) refusal or failure to make prompt payment to persons supplying labor or material for work under the contract. (Pl.'s Ex. J). After IRRA commenced a breach of contract action, Handex settled the action, waiving all claims for payment and agreeing to pay IRRA $205,000 to cover the cost of removing and/or repairing Handex's defective work. (Def.'s Ex. Q).

4

ever took place and denies that he directed Mitchell to confirm such a conversation in writing. (Myers Aff. ¶ 6).

Myers and Scott Anderson, Handex's Vice President ("Anderson"), both aver that pursuant to Article 13 of the subcontract, they considered AOA's May 3, 2003 letter to constitute a material breach of the subcontract. (Anderson Aff. ¶ 7; Myers Aff. ¶ 7). Article 13 of the subcontract states that a material breach includes a failure to comply with any term or condition of the subcontract within seven (7) days after written notification to do so. (Def.'s Ex. G). Accordingly, on May 7, 2003, Handex sent a "cure letter" to AOA requiring AOA's "commitment to project completion in accordance with our contractual terms within 24 hours."[2] (Pl.'s Ex. G). Thereafter, by letter dated May 9, 2003, AOA affirmed its commitment to project completion but did not withdraw explicitly the payment terms outlined in its May 3, 2003 letter. (Pl.'s Ex. H). A copy of this May 9, 2003 letter was also sent by AOA to IRRA's engineers. Handex claims that this letter was defamatory and directly caused IRRA to terminate Handex. (Def.'s Ex. K). In the meantime, before receiving AOA's response, on May 8, 2003, Handex submitted to IRRA for approval an

---

[2] Notably, at no point in this "cure letter" are the words "breach of contract" used. Also, Handex's "requirement" that AOA respond within 24 hours is not required by the subcontract.

alternate surveyor, GEOD Corporation. (Pl.'s Ex. M). By letter dated May 14, 2003, Handex terminated AOA. (Def.'s Ex. L).

With respect to the payment received by AOA for services rendered, AOA states that it has only received one check dated April 18, 2003, in the amount of $9,654.88. (Pl.'s Ex. E). AOA claims that this check was sent after Mitchell complained to Myers about payment and was an early payment on its second invoice; the check stub, however, references the date of AOA's first invoice, namely March 16, 2003. (Mitchell Aff. ¶ 7; Pl.'s Exs. A, E). After AOA's termination, AOA objected to the termination by letter dated May 30, 2003, and claimed a balance due of $38,951.87. (Def.'s Ex. M). Handex then tendered payment in the amount of $27,147 but proposed a 15% retainer on funds needed to cover any liquidated damages that Handex had to pay to IRRA. (Pl.'s Ex. I). This tender was rejected by AOA. (Pl.'s Ex. O).

On August 13, 2003, AOA filed the instant suit against Handex and GAIC. (Def.'s Ex. A). AOA asserts a claim for damages in the amount of $100,000 against Handex and a claim under the payment bond in the amount of $100,000 against GAIC. (Def.'s Ex. A). GAIC answered and asserted a counterclaim for attorney's fees under the New York State Finance Law. (Def.'s Ex. B). Handex answered and asserted two counterclaims for breach of contract, a counterclaim for inducing a breach of contract, a counterclaim for interference

6

with contract, and a counterclaim for defamation. (Def.'s Ex. C). Handex requests a $500,000 judgment on its counterclaims. (Def.'s Ex. C).

**DISCUSSION**

I. **Applicable Legal Standard**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. Id. at 255; Castle Rock Entm't, Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

II. **The Parties' Arguments and Analysis**

A. **Subject Matter Jurisdiction**

Defendant first argues that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. Defendant notes that following termination, in its May 30, 2003 letter and in other correspondence, AOA stated that the total services rendered to date was $48,518.75, leaving a balance due of $38,951.87. Defendant thus argues that Plaintiff is bound by its repeated representations that its damages are in fact well below the threshold amount. (Pl.'s Exs. R, M, L, O).

Plaintiff asserts that its damage claim independently exceeds the $75,000 threshold under 28 U.S.C. § 1332 in that its stated damages are $100,000. In support of this allegation, Plaintiff submits a Proof of Claim Form, signed under penalty of perjury by Plaintiff's counsel, stating that the outstanding amount due Plaintiff is $94,193.12. (Pl.'s Ex. L). Mitchell explains that after AOA was terminated, he "reviewed and reevaluated the actual value of the services that AA had rendered on the project" and the total amount of damages "including loss of profits on the contract and for non payment to a subcontractor under the provisions of the NYS Finance law is $94,193.12." (Mitchell Aff. ¶ 24). Plaintiff further asserts that in any event, the aggregate amount of Plaintiff's claimed damages and Handex's counterclaims far exceeds the statutory threshold.

This claimed jurisdictional impediment underlying Defendants'

8

request for summary judgment is disposed of easily. Pursuant to 28 U.S.C. § 1332, diversity jurisdiction extends to civil actions in which the amount-in-controversy exceeds $75,000, assuming the parties meet citizenship requirements.

A plaintiff's burden of proving damages over the jurisdictional minimum is <u>de minimis</u>. See <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-289 (1938) (establishing the "legal certainty" test whereby it must appear to a legal certainty that the claim asserted is for less than the jurisdictional minimum to justify dismissal); <u>see also</u> <u>Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.</u>, 166 F.3d 59, 63 (2d Cir. 1999). When a plaintiff is the party asserting federal jurisdiction, "the plaintiff must establish merely that it does not appear to a legal certainty that the claim is below the jurisdictional minimum." 15 <u>Moore's Federal Practice</u>, § 102.106[1] (Matthew Bender 3d ed.).

In this case, despite Defendants arguments to the contrary, Plaintiff has produced sufficient evidence to meet the requirements of the legal certainty test. See <u>United Food Local 919 v. CenterMark Props.</u>, 30 F.3d 298, 304-306 (2d Cir. 1994); <u>Wolde-Meskel</u>, 166 F.3d at 63. Plaintiff includes a Proof of Claim Form and an affidavit of Mitchell, both of which were sworn to under penalty of perjury. Other than Plaintiff's demands for a lesser sum prior to the initiation of this litigation, which did not include a claim for lost profits, the Court is without

sufficient contradictory evidence to conclude to a "legal certainty" that the claim is below the jurisdictional amount. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

As a final note on this issue, the Court wishes to admonish Plaintiff's counsel for what it considers to be a clear example of picking a few words out of an opinion that facially appear to support one's position without taking the time to read the opinion or understand its import. The two cases cited by Plaintiff in support of its argument that "the Court must aggregate the amounts presented by the Plaintiff's main claim and the counterclaims of Defendants" do not support that proposition. See Pl.'s Opp. Mem. at 5–6 (citing Clark v. Sidway, 12 S. Ct. 327 (1892); Sire v. Ellithorpe Air-Brake Co., 11 S. Ct. 195 (1891)). Both cases considered the issue of the Supreme Court's jurisdiction over a writ of error as outlined in Section 22 of the Judiciary Act, in which the judgment awarded the plaintiff in the lower court was below the Supreme Court's jurisdictional threshold but the amount claimed on a counterclaim was over the threshold. See Gordon v. Ogden, 28 U.S. 33, 34-5 (1830). Contrary to Plaintiff's counsel's representations, those cases in no way concern the jurisdiction of a federal district court.

### B. Breach of Contract Claim and Counterclaims

Handex moves for summary judgment on its first affirmative

defense and two counterclaims alleging a breach of contract based upon AOA's alleged attempt to modify the payment terms of the subcontract. AOA moves for summary judgment on its breach of contract claim alleging wrongful termination. As will be explained below, the Court finds curious the parties' attempts to move for summary judgment on these claims in light of the myriad statements in their papers attesting to what amounts to a credibility contest between Mitchell and Myers.

In order to establish a breach of contract claim, a plaintiff must establish: (i) the existence of an agreement; (ii) adequate performance by plaintiff; (iii) breach of contract by the defendant; and (iv) damages. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citing Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996). Here, the parties do not dispute that there was an agreement, i.e. the subcontract. They quickly part ways, however, in examining the second element. Plaintiff asserts that its performance was more than adequate, and that if its performance could be viewed as inadequate, it was only due to Handex's mismanagement and poor performance of the Contract. Handex asserts that Plaintiff's inability or unwillingness to provide "shop drawings" to Handex so that these drawings could then be provided to IRRA was the cause of IRRA's eventually defaulting Handex. In assessing whether there was a "breach," AOA and Handex are also unable to agree. AOA

asserts that Handex breached the subcontract by secretly obtaining a substitute surveyor and then terminating AOA. Handex asserts that AOA's attempt to modify the payment terms of the subcontract and its refusal to withdraw those terms constituted a material breach, justifying termination of the subcontract.

There are a number of outstanding material issues of fact on these issues, including:

- Did Myers and Mitchell have a conversation prior to AOA's May 3, 2003 letter regarding a change in payment terms?

- Did AOA's May 3, 2003 letter constitute an anticipatory breach or repudiation?

- Did AOA, in fact, continue performance until its termination?

- Did AOA contribute to Handex's default under the Contract by failing to provide "required survey layout shop drawings" so that they could be timely submitted by Handex to IRRA?

- Did Handex act reasonably by terminating the subcontract after AOA's May 9, 2003 letter, which stated that AOA was "committed to successful project completion"?

- Did Handex act reasonably by seeking approval for a new subcontractor before the expiration of the seven day cure period outlined in the subcontract?

In short, there is nothing in the record before the Court on this motion from which the Court could conclude that either party had performed adequately or had breached the contract, as a matter of law.

### C. AOA's Claim under the Bond

Plaintiff's notice of motion asserts that Plaintiff seeks "summary judgment to the Plaintiff on the complaint." The second claim of Plaintiff's complaint is a claim against GAIC for payment under the Bond. (Def.'s Ex. A). Plaintiff asserts in his Surreply Memorandum of Law, however, that "it is premature at this point to consider the sufficiency of Plaintiff's complaint verses [sic] the surety where no motion is pending on that issue." (Pl.'s Sur. Mem. at 8). In light of Plaintiff's statement that it has not sought summary judgment on its second claim against GAIC, the Court accepts this representation as a withdrawal of its motion for summary judgment on its second claim.

As such, the Court need not address whether a grant of summary judgment is appropriate on Plaintiff's second cause of action against the surety. If the Court were to consider such a motion, given the Court's conclusions above, the Court would be constrained to find that summary judgment on this claim would be similarly inappropriate.

### D. Handex's Remaining Counterclaims

In its answer, Handex asserted three counterclaims related to

AOA's May 9, 2003 letter, a copy of which AOA forwarded to IRRA. Specifically, the counterclaims asserted are for inducing a breach of contract, interference with a contract, and defamation. Handex claims that the defamatory statements contained in this letter caused IRRA to terminate the contract with Handex. Plaintiff argues that IRRA terminated the Contract for the reasons stated in IRRA's June 6, 2003 communication. (Pl.'s Ex. J).

### i. Interference with Contract

Handex separates what essentially amounts to a claim for tortious interference with a contract into its third and fourth counterclaims. Under New York law, to state a claim for tortious interference with contractual relations, the plaintiff must plead four elements: "(i) a valid contract between plaintiff and a third party, (ii) defendant's knowledge of the contract; (iii) defendant's 'intentional inducement' of the third party to breach the contract; and (iv) damages." Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001) (citing Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993)). Inducement "requires the plaintiff to establish that but for the allegedly tortious conduct of the defendant, the third party would not have breached" the contract. Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., 14 F. Supp. 2d 331, 335-36 (S.D.N.Y. 1998).

As courts have recognized that the third element of this claim

requires that the defendant intentionally induced a breach, Handex's two counterclaims will be addressed concurrently.  See, e.g., Perkins Sch. for the Blind v. Maxi-Aids, Inc., 274 F. Supp. 2d 319, 328 (E.D.N.Y. 2003).  Here, the parties do not dispute that Handex had a valid contract with IRRA or that AOA was aware of the Contract.  The nature of the dispute concerns the extent, if any, to which AOA's May 9, 2003 letter induced IRRA to "breach" the Contract with Handex.

Given that Handex withdrew any such claim for breach of contract that it may have been able to assert against IRRA in their settlement agreement, see Def.'s Ex. Q, the Court is concerned that Handex's claim for tortious interference is lacking in merit.  Nevertheless, the parties have failed to provide the Court with a sufficient record on this issue.  For example, the Court has not been provided with any deposition testimony from a representative from IRRA, who could conceivably resolve this rather simple factual dispute.  Instead, the Court is presented with each party's speculation and conjecture as to the basis for IRRA's termination of Handex.

As for the fourth element of such a claim, Handex's claim of damages also presents a dispute on a material issue of fact.  Handex asserts that it has been damaged in the amount of $500,000 because of AOA's inducement of a breach of and interference with the Contract.  Nonetheless, if Handex's

15

termination was in fact due to its own incompetence and mismanagement, which could easily be resolved with testimony from a representative from IRRA, then Handex's claim of damages is at best suspect and, more than likely, without any merit whatsoever.

As such, the Court is unable to resolve these disputed issues of fact on Plaintiff's motion for summary judgment, and the motion is denied as to Handex's third and fourth counterclaims.

### ii. Defamation

Handex further asserts that the statements contained in AOA's May 9, 2003 letter, which were published to IRRA, were defamatory. Under New York law, in order to prove a claim for defamation, a plaintiff must establish: (i) a false statement (ii) published without privilege or authority (iii) to a third party (iv) constituting fault, (v) which causes special damages or constitutes defamation per se. Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003) (citation omitted). For the reasons stated above, the Court is without a sufficient record to conclude as a matter of law that the statement was false or that the statement resulted in special damages or was defamatory per se. As such, Plaintiff's motion for summary judgment on Handex's fifth counterclaim is denied.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment before the Court are DENIED.

SO ORDERED.

                                                  s/s Thomas C. Platt
                                                  Thomas C. Platt, U.S.D.J.

Dated:    Central Islip, New York
            May 11, 2006